**FILED**

2004 MAY -4 P 4:08

U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MPI CORP., | : | CIVIL ACTION NO.: |
| Plaintiff, | : | 3:02 CV 1212 (DJS) |
| | : | |
| v. | : | |
| | : | |
| LEARNFRAME, INC., | | |
| Defendant. | : | October 18, 2002 |

AFFIDAVIT OF MICHAEL D. MEMMOTT, SR

State Of Utah
County Of Salt Lake

Affiant is Michael D. Memmot, Sr., Chief Executive Officer of the defendant Learnframe, Inc., and testifies as follows:

1. Affiant is over the age of eighteen years, believes in the obligations of an oath, and has personal knowledge of the matters set forth herein.

2. Predecessor counsel withdrew after Learnframe was unable to reach a satisfactory financial arrangement with it. Predecessor counsel did not assist Learnframe in preparing an Answer and Affirmative Defenses.

3. Learnframe first learned of the Court's order allowing predecessor counsel to withdraw and requiring a substitute

appearance by September 30, 2002 when served by the Sheriff of Salt Lake City, Utah on Friday September 27, 2002 and by federal express from predecessor counsel that same day.

4. On September 30, 2002, the next business day, Learnframe contacted law firms to secure representation and communicated with Rubenstein and Green, LLC that afternoon.

5. Rubenstein and Green, LLC informed Learnframe that it was too late to form a relationship that day.

6. Learnframe is a Utah based software development company whose principal efforts have been to market and develop "NEBO".

7. The software, called "NEBO", is a highly sophisticated management system that controls corporate training.

8. Learnframe developed the software to inpart serve the publishing industry and to function as a platform to assist publishers in selling their learning and educational products and services to their clients through e-learning sites.

9. On or about December 21, 2000, Learnframe and NETg, a Nevada corporation, a subsidiary of Harcourt, Inc., entered into an Integration and Licensing Agreement to develop and install NEBO for use by Harcourt in connection with its corporate

learning sales effortsand a true and correct copy of the agreement is Exhibit 1.

10. Under the agreement, Learnframe was to develop and install the software, grant a non-exclusive license, and receive royalties of at least $1,000,000 per year for three years.

11. The software was placed in escrow with a Utah firm.

12. After the Thomson Corporation purchased Netg, Learnframe was without a development partner.

13. Already obligated as successor to Harcourt, The Thomson Corporation approached Learnframe through its subsidiary, Thomson Ventures U.S., LLC, a Delaware Corporation, and offered to purchase stock of Learnframe for $5,000,000 and to convert the Netg agreement and development of NEBO thereunder for its use. A true and correct copy of the Thomson Ventures Convertible Note Purchase Agreement proposal is Exhibit 2.

14. The original proposal was withdrawn, and, within a few weeks, The Thomson Corporation presented Learnframe with the terms under which Learnframe could develop NEBO for use in The Thomson Corporation's publishing business.

15. On or about May 23, 2001, Learnframe and The Thomson Corporation's learning sector affiliate, TLI, entered a Software and Joint Ownership Agreement, which reflects that TLI was acquiring a joint ownership agreement in NEBO for the price of $2,550,000. A true and correct copy of this agreement is Exhibit 3.

16. The agreememt at page 1 reflects that TLI was a Delaware Corporation with an address of One Station Place, Stamford, Connecticut, the address for the Thompson Corporation, and was signed by Mr. Carson as Vice President of TLI.

17. On May 4, 2001, Learnframe and TLI, by Mr. Kenneth Carson, entered a Software License and Strategic Alliance Agreement. A true and correct copy of this agreement is Exhibit 4.

18. The essential terms of the agreement were as follows:

   (1) Learnframe would install NEBO into TLI's computer network and database systems.

   (2) Learnframe would grant a non-exclusive license for use of the software by TLI and its affiliates;

 (3) The parties would cooperate in alliance activities such as cross-website linking, proferred industry partner marketing, and cross-marketing;

 (4) Learnframe would earn, upon installation of the software, fees for, inter alia, technical support, consulting and training, and connections and integration according to the incorporated pricing proposal dated February 23, 2001.

 19. The contract contained no installation date for NEBO and my intent in entering the contract on behalf of Learnframe was that the contract contemplated mutual cooperation in the installation, testing and integration of NEBO into TLI's systems.

 20. On May 25, 2001. Learnframe and TLI, by Mr. Carson, entered into an Amended and Restated Source Code Escrow Agreement designating TLI and the plaintiff MPI, an Arizona Corporation, by Mr. Carson, as beneficiaries. A true and correct copy of the agreement is Exhibit 5. The escrow agent was the same Utah firm as under the NETg agreement.

21. The $2,550,000. purchase price reflected in the Software and Joint Oownership Agreement for rights to NEBO was never paid.

22. Instead, promissory notes and loan funds were supplied by an affiliate of The Thomson Corporation named MPI, an Arizona corporation. See The Note, Exhibit A to the Complaint.

23. Based upon all the knowledge I have as negotiator and representative for Learnframe regarding its negotiations and dealings with The Thomson Corporation, TLI and MPI, MPI Corp. had no independent business function in the transaction other than to insulate TLI and The Thompson Corporation from responsibility for their conduct under Software License and Strategic Alliance Agreement. MPI shares common officers and address with TLI and The Thomson Corporation. MPI is dominated and controlled by The Thomson Corporation and TLI with respect to this transaction. There is such a unity of interest and ownership of MPI that its independence has ceased or never begun.

24. In fact, the only facts that I have observed as officer of Learnframe most involved in the negotiations with The Thomson

Corporation and its affiliates that MPI exists with respect to this transaction is that agreements were signed by its officer, Mr. Carson, out of the Stamford office of The Thomson Corporation and TLI and that funds were disbursed under The Note in lieu of TLI's obligation to pay the $2,550,000 for its rights acquired under the Software and Joint ownership Agreement, Exhibit 3, p. 1.

25. In my opinion based upon my personal knowledge of the transactions, and based upon the facts contained in Mr. Brown's Affidavit that is filed herewith, TLI breached the contract by imposing unreasonable requirements not required under the contract in violation of its obligation of good faith under the contract and its duty not to hinder performance.

26. By its conduct in pursuing another vendor and ceasing cooperation in the installation of NEBO, TLI breached the contract and has avoided paying Learnframe any of the fees due Learnframe under the Software License and Strategic Alliance Agreement.

Further Affiant sayeth naught.

State of Utah

County Of <u>SALT LAKE</u>

Before me Michael D. Memmott, Sr. personally appeared and acknowledged under oath that the foregoing is true and correct.

_____
Michael D. Memmott, Sr.

_____
Notary Public

My Commission Expires: <u>2/26/2006</u>

